## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

JAMES BOWEN, individually and on
behalf of all others similarly situated,

       Plaintiff,

v.

WILLIAM E. GROOME and VICKI L.
GROOME,

       Defendants.

Case No.: 3:11-cv-00139-GPM-SCW

## Plaintiff's Response in Opposition to
## Defendants' Motion to Compel

Plaintiff James Bowen ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned attorneys Sandberg Phoenix & von Gontard P.C. ("Sandberg Phoenix"), responds to Defendants' Motion to Compel (Doc. 91):

### A. Introduction

Rather than advancing arguments on the merits, Defendants have resorted to "the unprofessional tactic of trying to make opposing counsel witnesses in this case." *Stull v. YTB Intern., Inc.*, No. 10-600-GPM, 2010 WL 3702424, at *5 (S.D.Ill. Sept. 8, 2010). Defendants assert the deposition of Jesse B. Rochman ("Jesse") is relevant by manufacturing baseless accusations of professional misconduct by drawing speculative inferences from selective quotations from Plaintiff's deposition. Defendants' speculation and conjecture are not only untrue, but fall woefully short of the heavy burden of

proving the necessity of such a deposition. Therefore, Defendants' motion to compel should be denied.[1]

## B. Legal Standard

Taking the deposition of opposing counsel is "a litigation tactic that, the court has noted in the past, is viewed with 'very deep disfavor.'" *Id.* at *4 (quoting *Will v. General Dynamics Corp.*, No. 06-698-GPM, 2007 WL 3145058, at *3 (S.D.Ill. Oct.25, 2007)). *See also Constance v. Brennan*, Civil Nos. 10-460-GPM, 10-517-GPM, 2010 WL 3303165, at *2 (S.D.Ill. July 23, 2010) (referring to the "litigation tactic of attempting to procure disqualification of an opponent's attorney by making the attorney a witness in a case" as "disfavored"). Taking the deposition of opposing counsel "is allowed only in exceptional circumstances." *Id.* at * 4.

> "Such a deposition provides a unique opportunity for harassment; it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness." *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 420 (N.D.Ill.1987). "[D]epositions of opposing counsel ... disrupt the adversarial process and lower the standards of the profession.... Thus, a party should not be permitted to take the deposition of another party's attorney except in the most unusual of circumstances."

---

[1]  Defendants' motion is not ripe. Plaintiff's attorneys are not parties to the case. *Baker Group, L.C. v. Burlington Northern and Santa Fe Railway Co.*, 451 F.3d 484, 492 (8th Cir.2006) ("attorneys are not parties to the underlying lawsuit"). *See also, e.g., Norouzian v. University of Kansas Hosp. Authority*, No. 09-2391-KHV, 2010 WL 3767142, at *2 (D.Kan. Sept. 15, 2010). Rule 45 is the only discovery method to obtain information from a nonparty. See Highland Tank & Mfg. Co. v. PS Intern., Inc., 227 F.R.D. 374, 379 (W.D. Pa. 2005) ("Rule 45 is the only discovery method whereby information may be obtained from a nonparty to the suit."); *Cuthbertson v. Excel Industries, Inc.*, 179 F.R.D. 599, 602 (D. Kan. 1998) (court lacked jurisdiction over nonparty where nonparty had not been served with subpoena but instead had appeared voluntarily for deposition); *Gutescu v. Carey Intern., Inc.*, 2003 WL 25589034, at *2 (S.D.Fla. June 24, 2003) (court had no jurisdiction to hold nonparty in contempt where subpoena with which nonparty allegedly failed to comply had been issued improperly). Defendants have failed to subpoena Plaintiff's attorneys; thus, depriving this Court of jurisdiction to compel their attendance.

*Wilson v. Scruggs*, No. Civ.A. 3:02CV525LN, 2003 WL 23521358, at *1 (S.D.Miss. Apr. 10, 2003). *See also M & R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305(N.D.Ill.1992) ("Deposing an opponent's attorney is a drastic measure. It not only creates a side-show and diverts attention from the merits of the case, its use also has a strong potential for abuse. Thus, a motion to depose an opponent's attorney is viewed with a jaundiced eye and is infrequently proper."); *Carehouse Convalescent Hosp. v. Superior Court*, 143 Cal.App.4th 1558, 50 Cal.Rptr.3d 129, 130 (Cal.Ct.App.2006) ("The adversarial system of justice presumes that the attorneys for each side oppose one another, not depose one another.").

*Id.*

In order for Defendants to overcome this highly disfavored litigation tactic, they must prove three factors weigh in favor of allow such a deposition. Indeed, a "party seeking to depose an opposing party's attorney shoulders a heavy burden of proving the necessity of such a deposition by showing that (1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to preparation of the examining party's case." *Id.*

## C. Argument

Defendants' motion collapses under the weight of their heavy burden. Indeed, Defendants do not even address the factors necessary to show exceptional circumstances exist that warrant allowing the deposition of Jesse B. Rochman.

### 1. Other means exist to obtain the information.

Defendants assert they seek Jesse's deposition because it may provide information regarding the solicitation of Plaintiff and the disqualification of Jesse, and his firm, as counsel for Plaintiff. In particular, Defendants contend

the deposition is relevant to show whether Jesse violated Rule 7.3(a) of the Illinois Rules of Professional Conduct, which provides:

> A lawyer shall not by in-person, live telephone or real-time electronic contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain….

Ill. Rs. Prof'l Conduct R. 7.3(a).

Information regarding how Plaintiff came to be represented by his attorneys could have been obtained by Defendants by simply asking, rather than attempting to take Jesse's deposition.[2] During Plaintiff's deposition, the following pertinent questioning took place:

> Q. Sir, earlier we were speaking about the conversation. [3] Earlier you had told me that Jesse Rochman from this law firm had called you; is that correct?
>
> A. No. I had talked to Jesse on the phone at some point, but I didn't remember who -- who contacted me first. My mind don't go back that far.
>
> Q. And you don't -- who did you speak with on that phone during that conversation?
>
> A. I don't know.
>
> Q. Do you have -- do you know if they were an attorney?
>
> A. I don't know that.
>
> Q. Do you know if it wasn't Jesse?

---

[2]   The fact Defendants failed to obtain this information by this simple manner makes clear their true motive: to harass Plaintiff's attorneys.

[3]   Throughout the deposition, Defendants' attorneys questions continually used the vague and ambiguous term "the conversation." A review of the entire deposition shows this term refers to multiple ***different*** conversations.

A. I don't know that.

Q. Was that -- during that conversation, were you solicited about filing this lawsuit?

A. I don't -- I don't recall the conversation, you know.

*See* Doc. 88-1, pp. 38-39. Although Plaintiff remembers talking to Jesse, during his deposition he did not recall if Jesse was the first person he spoke to regarding any potential recourse he may have against Defendants. In fact, Jesse was not the first person he spoke to regarding any potential claims he may have.

Barrett R. Rochman ("Barrett"), a competitor of Defendants, was the first person to contact Plaintiff based on his belief that Defendants artificially inflated the redemption costs paid by Plaintiff. *See* Barrett's Affidavit attached as **Exhibit A**, ¶¶ 3-10. Barrett was not requested or instructed to contact Plaintiff. *Id.* at ¶ 11. Instead, Barrett contacted Plaintiff on his own initiative and without the assistance of Jesse or other members of Sandberg Phoenix. *Id.* at ¶ 6. Prior to Plaintiff's conversation with Barrett, Plaintiff wanted to get his money back that Defendants fraudulently obtained, but was unaware he had any recourse. *See* Doc. 88-1, p. 39. During the conversation between Plaintiff and Barrett, Plaintiff was made aware he may have claims against Defendants to get his money back and was asked by Barrett if Plaintiff would like one of Barrett's attorneys to contact him to provide legal advice as to any potential claims Plaintiff may have against Defendants. *See* Exhibit A, ¶¶ 7-9. Plaintiff gave Barrett permission to give one of Barrett's attorneys Plain-

tiff's contact information for this purpose. *Id.* at ¶ 9. Accordingly, Barrett gave Plaintiff's contact information to Jesse (*id.* at ¶ 10), and subsequently, Jesse called Plaintiff.

Now that Defendants have the information they seek, it cannot be said that "no other means exist to obtain the information than to depose opposing counsel." *Stull*, 2010 WL 3702424 at *4. Moreover, even if this information was insufficient, an oral deposition of Jesse is not the only practical means of obtaining the information. "Other methods, such as written interrogatories should [first] be employed." *In re Subpoena Issued to Friedman*, 286 B.R. 505, 509 (S.D.N.Y. 2002) (quoting *Pereira v. United Jersey Bank*, Nos. 94 Civ. 1565, 94 Civ. 1844, 1997 WL 773716, at *8 (S.D.N.Y. Dec.11, 1997) (*quoting West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 302 (S.D.Fla.1990))). Defendants have not sought to utilize these less costly and cumbersome means to obtain the information they seek. Therefore, this factor weighs heavily against allowing Defendants to conduct the requested deposition and the motion to compel should be denied.

### 2. The information sought is privileged and irrelevant.

Defendants primarily seek information regarding Jesse's initial conversation with Plaintiff, where he ultimately agreed to be represented by Sandberg Phoenix. Defendants also seek unspecified information from Jesse not pertaining to his communications with his client. This information is privileged and irrelevant.

*I. The information sought is privileged.*

The Court found during Plaintiff's deposition, without the benefit of brief-ing, that up until Plaintiff agreed to be represented by Sandberg Phoenix, the communications were not protected by attorney-client privilege. *See* Exhibit A, pp. 21-22. The Court qualified this finding by stating it was being made "unless … there's a case out there that says otherwise." *Id.*

One case holding otherwise is *Bays v. Theran*, 418 Mass. 685, 690-91, 639 N.E.2d 720 (1994). In that case the "threshold question in this appeal is whether an attorney-client relationship existed between Errico and Lane by virtue of the preliminary consultations." *Id.* at 690. The Supreme Judicial Court of Massachusetts aptly noted, "[s]uch a relationship may be established through preliminary consultations, even though the attorney is never for-mally retained and the client pays no fee." *Id.* (*citing Commonwealth v. O'Brien*, 377 Mass. 772, 775 (1979) ("[t]he attorney-client privilege may ex-tend to preliminary communications looking toward representation even if representation is never undertaken"). That court then went on to analyze the facts before it:

> The facts found by the judge — that Lane communicated with Errico by mail and telephone with a view to possibly retaining him, that Lane and Errico discussed various aspects of a potential suit, and that Er-rico counseled Lane concerning some of the basic legal considerations involved in the suit — warranted the judge's conclusion that an attor-ney-client relationship had been formed.

*Bays v. Theran*, 418 Mass. 685, 690-91, 639 N.E.2d 720 (1994).

Many other cases have held to similar effect. *See, e.g., Todd v. State*, 113 Nev. 18, 931 P.2d 721, 725 (1997) ("the attorney-client relationship 'may be established through preliminary consultations, even though the attorney is never formally retained and the client pays no fee.'" (*quoting Bays, supra*)); *Levin v. Ripple Twist Mills, Inc.*, 416 F.Supp. 876, 883 (E.D.Pa.1976) ("Attorney-client privilege may attach to confidences shared with an attorney during a discussion of the possibility of representation, whether or not the counsel is in fact retained."); *Banner v. City of Flint*, 136 F.Supp.2d 678, 683 (E.D.Mich. 2000) ("Freifeld's obligations under the attorney-client privilege were undiminished by the fact that Rose had only a preliminary consultation and never formally retained him.").

A district court in this Circuit has also addressed a similar issue. The district court was required to determine whether an attorney-client relationship existed, such that attorney-client privilege would apply:

> Initially, this court must decide whether an attorney-client relationship arose between Maeir and Arvey Hodes. Defendants claim that, during the July 1981 meeting, Maeir disclosed confidential information with a view toward retaining Arvey Hodes and with a belief that an attorney-client relationship existed. Arvey Hodes argues in response that because the firm was never formally retained by Maeir no attorney-client relationship arose from this meeting. This argument was expressly rejected by the Seventh Circuit in *Kerr-McGee*.

> The mere fact that Maeir neither paid any fees to Arvey Hodes, nor executed a formal contract with them, does not preclude a finding of an attorney-client relationship. Because Maeir reasonably believed that he was consulting the Arvey Hodes attorneys in their professional capacity, and with a view toward retaining them, this court concludes that an attorney-client relationship did arise at the meeting between Maeir and the Arvey Hodes lawyers.

*Hughes v. Paine, Webber, Jackson & Curtis, Inc.*, 565 F.Supp. 663, 669 (N.D.Ill.1983).

During Jesse's initial call with Plaintiff, they discussed various aspects of the potential suit, including the facts regarding his redemption and the possibility that Defendants artificially inflated the redemption price. Jesse also counseled Plaintiff concerning some of the basic legal considerations involved in filing suit against Defendants. These types of discussions were found to be protected by the attorney-client privilege in the above cases even when the potential client did not retain the attorney. Logically then, it follow that these same protections are also protected by the attorney-client privilege, especially when the attorney is formally retained during the same. Therefore, this factor weighs heavily against allowing Defendants to conduct the requested deposition and the motion to compel should be denied.

## II. The information sought is irrelevant.

Jesse's deposition testimony would be entirely irrelevant to the proceedings herein. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Cook v. Hoppin*, 783 F.2d 684, 688 (7th Cir.1986). Whether Jesse violated the rules of professional conduct is of no consequence to the determination of Defendants' liability. Even assuming the ethical attacks are true (they are not), it still does not change the fact that Defendants admitted they defrauded Plain-

tiff and each member of the putative class by artificially inflating the amount of money required for the redemption their real property sold at tax sales in Indiana. Consequently, even if Jesse violated the rules of professional conduct (he did not), Plaintiff and each putative class member would still be victims of Defendants' fraud and entitled to the relief they seek.

Incredibly, Defendants' entire brief is devoid of citations to any cases or explanations as to how testimony elicited from Jesse could defeat Plaintiff's and the Class' claims. This is not surprising, however, because no testimony that Jesse could give bears upon the elements of the claims asserted by Plaintiff and the Class. Indeed, Defendants do not even attempt to assert, nor could they, that Jesse participated in the events giving rise to the underlying case so as to have personal knowledge that would make it more probable or less probable that Defendants participated in a (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business or property (i.e., Plaintiff and the Class' RICO claim). *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir.2006); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir.1992). Nor do Defendants try to assert that Jesse's testimony could make it more probable or less probably that Plaintiff and the Class suffered a pecuniary loss as a result Defendants acts of theft, conversion and deception (Crime Victims Act claim). Ind. Code § 34-4-30-1. Accordingly, Jesse's deposition is wholly irrelevant. Therefore, this factor weighs heavily against allow-

ing Defendants to conduct the requested deposition and the motion to compel should be denied.

### 3. The information sought is not crucial to Defendants' case.

Defendants apparently contend this information would be crucial for purposes of opposing class certification. This information is not crucial and would not defeat class certification under prevailing case law in this Circuit and elsewhere.

Initially, Defendants have already made ethical attacks against Plaintiff's attorneys, and this deposition is an unabashed attempt to further those attacks, rather than legitimately oppose class certification. Initially, "the Court strongly discourages glib invocations of professional conduct rules by the attorneys who practice before it." *Dudley v. Putnam Inv. Funds*, 472 F.Supp.2d 1102, 1107 n. 3 (S.D.Ill.2007). "[A]rguments raised by litigants based on professional conduct rules usually consume needlessly both the Court's time and that of the parties," and "is one of the reasons why it generally is a good idea for counsel to avoid making arguments based on such rules in their submissions to the Court." *Will*, 2007 WL 3145058 at *2 n. 1. This is equally true in the class action context. *In re Pfizer Inc. Sec. Litig.*, Nos. 04 Civ. 9866 & 05 MD 1688, 2012 WL 1059671, at *8 (S.D.N.Y. Mar. 29, 2012).

"When assessing the adequacy of counsel, courts are generally skeptical of defendants' ethical attacks on class counsel."

> [P]ermitting defendants to police the adequacy of class representatives and their counsel is like "permitting a fox ... to take charge of the chicken house." *Eggleston v. Chicago Journeymen Plumbers' Local Un-*

> *ion.* 657 F.2d 890, 895 (7th Cir.1981). It is in a defendant's best inter-
> ests to object to class counsel who are, in fact, best suited to protect the
> class and represent its interests, so that the defendant can seek new
> class counsel who will more readily compromise the claims of the class
> ... It is this presumption of strategic behavior by class action defen-
> dants that has convinced courts to preclude, or severely limit, their
> ability to raise alleged ethical violations in the context of class certifi-
> cation.

*Id.* (*quoting McNamarav. Bre–X Minerals, Ltd.*, 97–CV–159, 2003 U.S.Dist.

LEXIS 25641, at *52-54 (E.D.Tex. Mar. 31,2003). *See also Hemming v. Alfin*

*Fragrances, Inc.*,, No. 86 Civ. 2563, 1990 WL 106997, at *3–4 (S.D.N.Y. July

25, 1990). The skepticism here should be heightened, especially given the af-

fidavit submitted in connection with this response showing Defendants' ethi-

cal attacks were completely unfounded and untrue.

Even assuming Jesse violated the rules of professional conduct when he

called Plaintiff for the first time, which is vehemently denied, such a violation

would not defeat class certification.

> The contradictory assertions as to counsel's compliance with ethical
> standards in this regard are insufficient to demonstrate that Lead
> Counsel is inadequate to act in such capacity for the class....*See In re*
> *Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897, 2011 WL 2581755, at
> *6 n. 8 (S.D.N.Y.Apr.29, 2011) ("Defendants sometimes challenge class
> counsel's adequacy on the ground of violation of professional ethics in
> connection with the class litigation ... [Most courts] have not barred
> class certifications grounded on any determination of the merits of
> such ethical complaints")(citing 1 Newberg on Class Actions Section
> 3:42(4th ed.).)

*In re Pfizer Inc. Sec. Litig.*, 2012 WL 1059671 at *8. Although Defendants

cited to a district court case out of California and a state case out of New

York, they failed to cite Seventh Circuit case law that squarely addresses the interplay of alleged ethical violations and class certification.

Only "[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir.2011) (*citing Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir.2002)). In evaluating the evidence, the Seventh Circuit stated "class counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class" and that "[t]here is no basis for confidence that they would prosecute the case in the interest of the class, of which they are the fiduciaries, rather than just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts. *Id.* at 917. The Seventh Circuit therefore vacated and remanded the case "with directions that the district court, applying the *Culver* standard rather than the 'egregious misconduct' standard, re-evaluate the gravity of class counsel's misconduct and its implications for the likelihood that class counsel will adequately represent the class." *Id.* at 919.

In *Culver*, the plaintiff alleged racial discrimination against white males in the hiring practices of the Milwaukee police department. Culver, 277 F.3d at 909. The suit began in 1993. *Id.* at 910. The plaintiff claimed that when he sought an application to become a police officer, the City of Milwaukee told him they would not be accepting any applications from white males before

1994. *Id.* The named plaintiff sought to represent not only those who sought and were denied applications, but also white applicants who had managed to obtain applications but were denied employment in favor of others with lower test scores. *Id.* The district court certified the class in 1995, but later decertified it in 2001. *Id.* Meanwhile, class counsel—a sole-practitioner with no co-counsel—had failed to meaningfully pursue the case and refused to establish sub classes for the disparate claims alleged. *Id.* at 912. In addition, the named plaintiff had testified he was satisfied with his current job and no longer wanted to be a police officer. *Id.*

Both class counsel and her client were found to be inadequate representatives by the trial court, and the Seventh Circuit affirmed the decision to decertify. *Id.* at 915. The Seventh Circuit explained:

> Culver might (in principle, though not in actuality, as we're about to see) be an adequate representative of the subclass to which he belongs, and the lawyer for the class might be able to interest a member of the other subclass in becoming the representative of that subclass. But the lawyer has not tried to do that; she insists that the class not be divided.

> The district judge was justifiably skeptical of Culver's adequacy to represent even his own subclass. Culver made only perfunctory efforts back in 1993 to obtain a job application, and shortly afterwards he obtained another job, with which he is content. Having thus no interest in injunctive relief and not seeking damages either (he admits that his claim is moot), Culver not surprisingly has pursued the suit in a most lackadaisical manner. In the eight years that it has been pending, he has yet to identify any other members of either the larger class or his subclass. He has done nothing to move the case forward except file a flurry of frivolous motions to recuse the various district judges who have succeeded each other in the unrewarding task of shepherding this case.

… even if Culver were an adequate representative of his own subclass, the district judge was not obliged to allow the suit to be maintained as a class action in the face of the refusal of the class representative's lawyer to cooperate in dividing the class into subclasses. That refusal was another ground for decertification, as it was a further indication that the plaintiff was an inadequate representative of the class(es). For purposes of determining whether the class representative is an adequate representative of the members of the class, the performance of the class lawyer is inseparable from that of the class representative.… All Culver's moves in this suit were almost certainly the lawyer's. Realistically, functionally, practically, she is the class representative, not he. … If, therefore, the lawyer, through breach of his fiduciary obligations to the class, or otherwise, demonstrates that he is not an adequate representative of the interests of the class as a whole, realism requires that certification be denied.

The adequacy concerns raised in *Culver* are not at issue in this case. Unlike *Culver*, this case does not involve: (1) a named plaintiff with no interest or stake in the case; (2) a heterogeneous class in need of both sub-classing and additional class representatives that have been opposed by class counsel; (3) a lackadaisical case prosecution over the course of eight years; (4) a solo practitioner as the only class counsel involved in the prosecution; and (5) numerous frivolous motions filed by Plaintiff. In contrast to *Culver*, here: (1) the Plaintiff has an existing interest in the outcome of this case; (2) there is no need for sub-classes or additional named plaintiffs; (3) class counsel has litigated this case competently and promptly in the best interests of obtaining victory for the class in the face of aggressive and unprofessional opposition; (4) there is an experienced law firm acting as class counsel; and (5) unlike Defendants, class counsel have not filed frivolous motions or unnecessarily delayed the case.

As the facts and legal analysis of *Culver* show, even assuming that the alleged solicitation in this case occurred – which it didn't – and even assuming it amounted to a violation of the Model Rules – which it wouldn't – the solicitation still would fall far short of a level warranting denial of class certification under *Culver*. *Culver* involved a class action where there was a palpable and glaring conflict of interest among class members, and class counsel had done nothing to remedy the conflict. The courts found that the class counsel had actually frustrated the interests of many class members.

In short, the alleged solicitation here does not create any doubt, let alone serious doubt, that Plaintiff's attorneys would not represent the Class loyally. Indeed, the record before this Court demonstrates Sandberg Phoenix has zealously and loyally represented Plaintiff and the Class. Nothing Sandberg Phoenix has done gives this Court reason to entertain any suggestion to the contrary. Thus, it cannot be seriously contended that the information sought by Defendants is crucial to their case. Therefore, Defendant's motion to compel should be denied.

## D. Conclusion

Defendants have failed to shoulder their heavy burden. The information they seek has already been provided and additional information can be more readily and inexpensively obtained by other means. Defendants cannot identify any information that Jesse could offer that would be relevant or reasonably calculated to lead to relevant information regarding the claims asserted in this action or possible defenses to same. Moreover, the information sought

lacks and crucial relationship to the underlying litigation. Consequently, it becomes painfully obvious that there is no just basis for Jesse's deposition; rather, they seek to annoy, embarrass or harass him by taking his deposition. Defendants are really just trying to create a side-show that diverts attention from the merits of the case. Such unprofessional tactics should be treated with the disfavor they deserve, and Defendant's motion to compel should be denied.

Respectfully submitted,

Sandberg Phoenix & von Gontard P.C.

By: /s/A. Courtney Cox
    A. Courtney Cox, #6182590 (IL)
    Jesse B. Rochman, #6298658 (IL)
    600 Washington Avenue – 15th Floor
    St. Louis, MO 63101-1880
    314-231-3332
    314-241-7604 (Fax)
    ccox@sandbergphoenix.com
    jrochman@sandbergphoenix.com

*Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on May 17, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

/s/A. Courtney Cox

3537526\1                    17