UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES BOWEN, individually and as Class Representative,<br><br>　　　　Plaintiff,<br><br>v.<br><br>WILLIAM E. GROOME and VICKI L. GROOME,<br><br>　　　　Defendants. | Case No.: 3:11-cv-00139-GPM-SCW |

## Motion to Reconsider

　　Plaintiff James Bowen ("Plaintiff"), individually and as Class Representative, by and through Class Counsel Sandberg Phoenix & von Gontard P.C. ("Sandberg Phoenix"), respectfully moves this Court to reconsider its order denying the Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Notice to the Class (Doc. 130):

**A.　Introduction**

　　On December 3, 2012, a hearing was held on the parties' Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Notice to the Class ("Joint Motion") (Doc. 126). The Court denied preliminary approval of the proposed Settlement Agreement attached to the Joint Motion after expressing disapproval of the money allocated to Class Counsel in proportion to the money allocated to the Class in the Settlement Agreement. The allocation, however, provides the Class *100 percent* of its actual damages while awarding Class Counsel *less* than "the market price for legal services, in light of the risk of nonpayment and

1

the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir.2007) ("In deciding fee levels in common fund cases, we have consistently directed district courts to do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."). Accordingly, the proposed Settlement Agreement is "fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir.2002).

**B. Argument**

Plaintiff's actual damages are approximately $800. "An attorney would presumably not take a contingency fee case where the projected recovery was" this small. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997). "This, of course, is why some statutes allow for attorney's fees even when the plaintiff's monetary award is nominal." *Id.* Indeed, the "attorney's fee provision makes the class action more likely to proceed, thereby helping to deter future violations." *Id.*

Plaintiff and the Class brought claims pursuant to civil RICO, Indiana RICO and the Crime Victims Act, all of which contain fee-shifting provisions. The objectives of these important pieces of legislation often can only be achieved when violations of their provisions are resolved through private litigation involving small sums like here. As the Seventh Circuit explained:

> Fee-shifting provisions signal Congress' intent that violations of particular laws be punished, and not just large violations that would already be checked through the incentives of the American Rule. "The function of an award of attorney's fees is to encourage the bringing of meritorious ... claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera*, 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (quotation marks and

2

citation omitted). Or, more simply stated, fee-shifting "helps to discourage petty tyranny."

*Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir.2009). The claims brought by Plaintiff and the Class are not just meritorious, they will result in "important social benefits that are not reflected in nominal or relatively small damages awards." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 824 (7th Cir.2009). "Tax sales are attended with greater sacrifices to the owners of land than any others. Purchasers at those sales seem to have but little conscience." Games v. Stiles, 39 U.S. 322, 328 (1840) (quoting 2 Ohio Rep. 233). The lack of conscience would remain unchecked in Indiana and owners would continue to be deprived of their property by the artificially inflated Redemption Prices. This litigation, however, has resulted in Defendants agreeing to stop their practice of artificially inflating Redemption Prices at tax sales and serves as a powerful deterrent for others to do the same.

The key inquiry then is not whether the attorney's fees are proportional to damages. In fact, the Seventh Circuit has "repeatedly rejected the notion that the fees must be calculated proportionally to damages." *Tienor*, 570 F.3d at 823. "Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy." *Anderson*, 578 F. 3d at 545. What is most important, however, is whether the amount of legal services expended by Class Counsel is a reasonable method of achieving the result ultimately obtained the case. *Id.* at 546 ("For example, it is

3

absolutely permissible to spend $100,000 litigating what is known to be a $10,000 claim if that is a reasonable method of achieving the result."). And the complexity of the case, not the size of the claims, is paramount to this decision. *Id.* ("But small claims can be complex and large claims can be very straightforward. So while a fee request that dwarfs the damages award might raise a red flag, measuring fees against damages will not explain whether the fees are reasonable in any particular case.").

Here, the actual damages sought by the Class were nearly $23,000. The Settlement Agreement also contemplated that Class Counsel would receive nearly $125,000 or approximately five times the money recovered by the class. The Class, however, recovered the entire amount of their actual damages, which makes proportionality irrelevant. *Id.* at 545 ("proportionality seems to be losing favor and is irrelevant in our case because the Funds recovered the entire amount of the claimed deficiency."). Moreover, when it comes to an award of attorney's fees, the Seventh Circuit has urged "parties to attempt to settle the matter so that the tail can stop wagging the dog. As the Court stated in *Hensley*, "Ideally, of course, litigants will settle the amount of a fee." *Tienor*, 570 F.3d at 823 (quoting 461 U.S. at 437, 103 S.Ct. 1933). This is precisely what the parties did here.

Even if proportionality was relevant, the attorney's fees are not disproportionate. Instead, they reflect a reasonable method of achieving the result obtained by the Settlement Agreement when considering the complexity of the case. Plaintiff brought a civil RICO class action. Class actions are considered complex litigation on their own. Manual for Complex Litigation, Fourth §§21.1, *et seq.* (2004); *Shaw v.*

4

*Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 951 (E.D. Tex. 2000) ("class actions are complex mechanisms that require exceptional lawyers"); *Berkley v. U.S.*, 59 Fed. Cl. 675, 681 (2004) ("Class actions, by their complex nature, carry with them a particularly strong public and judicial policy in favor of settlement."). Civil RICO claims are equally complex. Manual for Complex Litigation, Fourth §§35.1, *et seq.* (2004). Bringing a civil RICO case as a class action introduces "additional complexities." *Id.* at 691.

In addition to the complexity of the case, the reasonableness of the fees should be considered in the context of this litigation, which was a particularly hard-fought case as Defendants chose a litigation strategy that in large part focused on launching vexatious attacks against Plaintiff and Class Counsel. From creating a multitude of discovery issues requiring resolution by the Court to seeking the testimony of Plaintiff's counsel, Defendants created unnecessary additional issues in this litigation, forcing Plaintiff and Class Counsel to respond to each one. *See, e.g.,* Docs. 26, 27, 49, 50, 52, 55, 56, 57, 63, 67, 76, 77. Indeed, the Court even sanctioned Defendants for their failure to obey a court order regarding discovery. *See* Doc. 77.

With the context of the litigation in mind, Class Counsel reasonably expended approximately 821 hours at a market price of $194,306 as shown in more detail on **Exhibit 1**.[1] Even this amount (approximately eight times the damages) is not so

---

1 This amount does not include over $6,000 in costs (*e.g.,* dhl/fedex/ups, court reporter services, copying, filing fees, long-distance telephone charges, mileage/parking, service fees, duplication charges and electronic research). Nor does this amount reflect the additional attorney's fees and costs Class Counsel will have to expend in administering the settlement.

3921264\1

disproportionate that it would preclude approval of such an award. *See, e.g., SKF USA Inc. v. Bjerkness,* 2011 WL 4501395, at * 3 (N.D. Ill. 2011) (refusing to reduce a $1.3 million dollar award of attorneys' fees when the damages were only $81,068 because Congress predetermined the claim was worth bringing even though there was great disparity between the amount recovered and the attorneys' fees requested); *Garcia v. R.J.B. Properties, Inc.*, 2010 WL 2836749, at *4 (N.D. Ill. July 19, 2010) (awarding fees nearly ten times greater than the damage award); *Catalan v. RBC Mortg. Co.*, 2009 WL 2986122, at *11-12 (N.D. Ill. Sept. 16, 2009) (awarding fees nearly 15 times greater than the damage award); *Bennett v. Slowiak*, 1994 WL 698488, at *2-5 (N.D. Ill. Dec. 12, 1994) (awarding fees near the lodestar despite the fact that plaintiff had sought $700,000 but recovered only $10,000); *Altergott v. Modern Collection Techniques, Inc.*, 864 F. Supp. 778 (N.D. Ill. 1994) (awarding fees eight times greater than the damage award). Despite the fees on Exhibit 1 being reasonable, in order to settle this matter and ensure that the Class would receive 100 percent of their actual damages, Class Counsel agreed to accept $70,000 less than the market price for their services, which is substantial "in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton*, 504 F.3d 692.

Therefore, the proposed Settlement Agreement is more than "fair, adequate, and reasonable, and not a product of collusion." *Reynolds*, 288 F.3d at 279.

### C. Conclusion

WHEREFORE, Plaintiff respectfully requests, individually and as Class Representative, the Court enter a preliminary approval order of the Settlement

6

3921264\1

Agreement granting preliminary approval of the proposed settlement, directing that Notice in the form attached as Exhibit 2 to the Settlement Agreement be sent to the members of the Class by first class mail, and setting dates by which objections must be made or Class members may opt-out and a hearing for final approval; and for such other relief as are justified and equitable under the circumstances.

Respectfully submitted,

Sandberg Phoenix & von Gontard P.C.

By: /s/A. Courtney Cox
A. Courtney Cox, #6182590 (IL)
Jesse B. Rochman, #6298658 (IL)
600 Washington Avenue – 15th Floor
St. Louis, MO 63101-1880
314-231-3332
314-241-7604 (Fax)
ccox@sandbergphoenix.com
jrochman@sandbergphoenix.com

*Class Counsel*

## Certificate of Service

I hereby certify that on December 18, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

/s/A. Courtney Cox